**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GARY W. TIPTON,** | ) | **CASE NO. 1:26 CV 1542** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

*Pro se* Plaintiff Gary W. Tipton, an inmate in the Grafton Correctional Institution ("GCI"), brings this civil rights action against the Ohio Department of Rehabilitation and Correction ("ODRC"), twelve GCI employees, two private hospitals, and multiple private hospital staff members. He alleges that the Defendants failed to prevent his numerous acts of self harm. He asserts claims for violation of his Eighth Amendment rights as well as state law tort claims for negligence and medical malpractice. He seeks one million dollars in damages and payment of his medical expenses.

**Factual and Procedural Background**

Plaintiff alleges that on January 5, 2026, he engaged in an act of self harm which required surgery at the Ohio State Medical Center. When he returned to GCI, he was placed on high risk constant suicide watch.

On March 31, 2026, Plaintiff's uncle reported to GCI authorities that Plaintiff expressed an intent to harm himself. Plaintiff was escorted to a conference room where he as assessed by

Nurse M. Sarocco. It appears that Plaintiff was still housed in a special unit for inmates deemed to be a high risk for suicide and requiring constant observation so the nurse determined that there was no immediate need for additional intervention. Plaintiff was interviewed by GCI psychologist Dr. Gordon the following day, April 1, 2026. Plaintiff told Dr. Gordon that while he was having some thoughts of self harm, he would not act them. He told the doctor that he was having relationship issues, and asked to be permitted to make a telephone call. That request was denied.

Plaintiff returned to his cell and lacerated his wrists and his abdomen. He then inserted a pencil into his abdomen and perforated his bowel. Nurse Grabil was the first to come to his cell. She was quickly joined by Lieutenant Jackson, Dr. Gordon, Officer Mallory, Officer Gibson, Nurse Walker, and Nurse John Doe #2, and together they stabilized Plaintiff until an ambulance arrived. He was transported to University Hospitals of Cleveland where he underwent emergency surgery. He was placed on suicide watch at the hospital, monitored by hospital staff. A few hours after surgery, a food tray containing a plastic spoon was delivered to him. Plaintiff promptly inserted the plastic spoon into his fresh surgical wound, necessitating another surgery. After this incident, hospital staff moved Plaintiff to the psychiatric unit. He was discharged from the hospital on April 9, 2026.

Upon his return to the prison, GCI staff once again placed him on suicide high risk constant watch. He nevertheless was able to obtain two plastic spoons. He does not indicate how he obtained these spoons, but claims officers could have searched his cell when he was escorted to the shower or more closely examined his food trays. On April 14, 2026, Plaintiff was assessed by GCI staff who then called a medical emergency. Plaintiff does not elaborate on the

nature of this medical emergency. He states only that he was taken to University Hospitals Elyria Medical Center where he was admitted for "self injurious suicide behaviors." (Doc. No. 1 at PageID #: 20).

During this hospitalization, Plaintiff was constantly monitored by both ODRC employees and University Hospitals staff. Shortly after he got out of surgery, Nurse Jane Doe came to his room with a full-sized toothbrush so that he could brush his teeth under the supervision of the ODRC and hospital staff. Prior to handing it to him, Plaintiff promised Nurse Doe that he would immediately return the toothbrush to Corrections Officers Slimak and Edwards when he had finished brushing his teeth. Once Plaintiff got possession of the toothbrush, however, he promptly pushed the entire toothbrush into the fresh incision in his abdomen completely embedding it in his abdominal cavity. Plaintiff contends that a physician and two physician assistants responded to the alert that was issued. He claims the doctor reached into his incision and physically removed the toothbrush. Thereafter, medical staff denied Plaintiff any opiod pain medications. He claims he had to wait for a CT scan and x-rays to be taken and then had to wait for those tests to be read. Once the results were obtained, Plaintiff was taken to surgery to repair the new damage. He contends that hospital staff should have treated this as a Level One trauma, rather than as a bedside procedure.

Plaintiff was discharged back to GCI on April 25, 2026. He again was placed on suicide high risk constant watch. Nevertheless, he was somehow able to obtain another plastic spoon. Once again, he does not allege how he managed to obtain the spoon under supervision. He contends Officers Mallory, Latorre and John Doe failed to thoroughly search his cell while he was in the shower or thoroughly examine his food tray. He once again inserted the spoon into his

abdomen, requiring him to be transported to University Hospital of Elyria Medical Center. After removal of the plastic spoon, he was sent to the Ohio State University Wexner Medical Center. He was discharged from the hospital two days later on April 27, 2026.

Just forty-nine minutes after returning to GCI, Plaintiff inserted a paper spoon into his abdomen. He was transported to the University Hospital of Elyria Medical Center where the paper object was removed.

Plaintiff contends the Defendants were deliberately indifferent to his serious medical needs and acted with negligence in failing to prevent him from harming himself. He asserts claims under the Eighth Amendment and state tort law. He seeks monetary damages.

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009). The factual allegations in the

pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the Defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)

**Discussion**

**A. Parties**

Plaintiff first sues the ODRC. The ODRC, however, is immune from suit. The Eleventh Amendment is an absolute bar to the imposition of liability upon state agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

In addition, Plaintiff lists Corrections Officer Judkins as a Defendant but does not include any allegations against him in the Complaint. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Because the Complaint does not describe what role, if any, Officer Judkins had in the events giving rise to the Complaint, he must be dismissed from this action.

Plaintiff also sues University Hospital of Elyria Medical Center, University Hospital of Cleveland, Dr. Lareau, Dr. McCabe, Dr. Lalk, Dr. Parrisbaldgun, Dr. Sayon, Dr. Young, Dr. Anderson, P.A. Bosse, P.A. Sefcik, P.A. Estridge, P.A. Moyo, LSW Michelle, LSW Alessandro, Nurse Jane Doe, and Hospital Sitter Jane Doe ("collectively "hospital Defendants"). It is unclear whether he intended to assert claims against them under both 42 U.S.C. § 1983 and the state tort laws, or if he intended to include only the state tort law claims against these Defendants.

To the extent that Plaintiff seeks to bring claims under 42 U.S.C. § 1983 against the hospital Defendants, he fails to state a claim upon which relief may be granted. To establish a *prima facie* case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the Defendant must be a state or local government entity, official or employee. The hospital Defendants are private parties, not government officials or government entities. Plaintiff cannot bring claims against them under 42 U.S.C. § 1983.

**B. Eighth Amendment Claims against GCI Defendants**

Moving to the merits of his claims, Plaintiff first asserts that the GCI Defendants failed to prevent him from harming himself in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take *reasonable* measures to guarantee

the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984))(emphasis added).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* This state of mind for Eighth Amendment purposes requires the Plaintiff to prove that the Defendant was deliberately indifferent to his health or safety. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

An official shows deliberate indifference if he comprehends that a substantial risk of serious harm to the prisoner exists, and fails to take reasonable steps to protect the inmate's safety. *Farmer*, 511 U.S. at 844-45; *Flanory v. Bonn*, 604 F.3d 249, 253-55 (6th Cir. 2010). The Eighth Amendment, however, does not require prison officials to go to extraordinary lengths to prevent all harm from befalling a prisoner. Indeed, such a standard would require prisons to take extreme measures or house inmates under the most restrictive conditions which may themselves

be considered to be inhumane. Instead, prison officials must take steps that are reasonable. The Supreme Court recognized this dilemma:

> prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety..., a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions. Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Farmer*, 511 U.S. at 844-45 (1994)(citations omitted). The Sixth Circuit echoed this statement:

> [P]rison officials who actually knew of a substantial risk to inmate health or safety [still] may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

*Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020)(internal quotations and citations to *Farmer* omitted). The reasonableness requirement also prevents negligent actions from being elevated to constitutional violations. Plaintiff cannot state a claim for violation of the Eighth Amendment simply by alleging that Defendant failed to prevent the harm from occurring, nor can he say that he was able to harm himself because the Defendants were negligent in their efforts to constantly monitor him. He must also allege facts to suggest the Defendant behaved unreasonably.

In this case, prison officials placed him in a clean cell under constant observation in a high risk unit. He had at least one officer assigned to watch him at all times. During his periods of hospitalization, the prison personnel were joined by hospital staff in their efforts to maintain constant supervision of Plaintiff. Despite all of this, Plaintiff utilized his own resourcefulness to obtain and hide objects that he could use to injure himself. He does not allege how he managed

to obtain these items while he was being watched, or where he secreted them until the moment he chose to act. He was given prompt medical attention every time he injured himself. Although Plaintiff alleges that the prison officials should have taken additional precautions, there is nothing in the Complaint to suggest that their response to his actions was deliberately indifferent or unreasonable in any way.

Moreover, to hold a Defendant liable under the Eighth Amendment, Plaintiff must allege facts to show that each Defendant acted with deliberate indifference. Plaintiff, however, actually alleges very few facts regarding the actions of any particular Defendant.

Plaintiff alleges that Gordon and Sarocco interviewed him and failed to conclude that he was in imminent danger of engaging in self harm. Indeed, he was already the high risk constant supervision unit at the time the report was made and Plaintiff himself told Gordon he was not intending to act on his feelings. Plaintiff does not allege facts suggesting that Gordon or Sarocco acted with deliberate indifference.

Plaintiff alleges that Gordon, Grabil, Jackson, Mallory, Gibson, Walker and John Doe #2 responded to the medical emergency in his cell on April 1, 2026 and helped to stabilize him before the ambulance arrived. Nothing in those actions suggests any wrong-doing, much less deliberate indifference.

Plaintiff contends, without explanation, that Mallory, Latorre and Jackson failed to prevent him from harming him. He does not allege what their roles in the prison were at that time or even how they were connected to his observation. It appears that Jackson and Mallory may have been supervisors of the John Doe Defendant who was actually observing Plaintiff. These allegations are very general and provide no information reasonably suggesting they acted

with deliberate indifference toward his safety.

Finally, Plaintiff alleges that Slimak and Edwards failed to perceive the immediate danger of handing a toothbrush to the Plaintiff in the presence of both officers and hospital personnel just hours after surgery. At best, this miscalculation could potentially be deemed to be negligent; however, negligence will not support an Eighth Amendment claim.

Because Plaintiff cannot bring claims under 42 U.S.C. § 1983 against the hospital Defendants and because he failed to show that the GCI Defendants were deliberately indifferent to his acts of self harm, Plaintiff's Eighth Amendment claims must be dismissed. The remaining claims in the Complaint all arise, if at all, under state tort law.

**C. State Law Claims**

Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id*

**Conclusion**

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: September 2, 2026